# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 17-263 (DWF/DTS-1) |
| | Civil No. 19-1325 (DWF) |
| Respondent-Plaintiff, | |
| v. | **MEMORANDUM** |
| | **OPINION AND ORDER** |
| John Henry Edmonds, | |
| Petitioner-Defendant. | |

___

John Henry Edmonds, Petitioner-Defendant, *Pro Se*.

Surya Saxena, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

___

## INTRODUCTION

This matter is before the Court on Petitioner-Defendant John Henry Edmonds' ("Petitioner-Defendant") *pro se* motion under 28 U.S.C. § 2255 to vacate his sentence of 80 months' imprisonment and resentence him to a term within the range of 41 to 51 months' imprisonment. (Doc. No. 89.) The United States of America (the "Government") opposes Petitioner-Defendant's motion. (Doc. Nos. 93, 96.)

Specifically, Petitioner-Defendant alleges that the Court erred in imposing an upward departure and upward variance at sentencing, and that he received ineffective assistance of counsel in that his attorney failed to challenge what he alleges were breaches of the plea agreement reached with the Government. The Government opposes

any order to disturb the judgment entered on the grounds that Petitioner-Defendant was properly sentenced, that he received adequate representation throughout the proceedings, and that any motion made by his counsel to withdraw from the plea agreement for breach would have been meritless. The Government further argues that no evidentiary hearing is warranted because the record conclusively supports the judgment as entered.

For the reasons set forth below, the Court denies Petitioner-Defendant's motion.

**BACKGROUND**

Petitioner-Defendant was charged with six counts of distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 853 by a superseding indictment filed on December 12, 2017. (Doc. No. 29.)

Pursuant to a written plea agreement (Doc. No. 53 ("Plea Agreement")), on March 20, 2018, Petitioner-Defendant entered a plea of guilty to Counts 1 through 5 of the superseding indictment. (Doc. No. 79 ("Change of Plea Hrg.").) A Presentence Investigation Report ("PSR") was ordered (*id.* at 44), and each party filed a sentencing memorandum setting forth their respective positions (Doc. Nos. 66, 67). The PSR included calculations under the United States Sentencing Guidelines (the "Guidelines") totaling an adjusted offense level of 26 and a criminal history category ("CHC") of VI, which when combined with all applicable factors resulted in an advisory Guidelines range of 92 to 115 months' imprisonment. (Doc. No. 60 ("PSR") ¶¶ 26, 77, 105.) Petitioner-Defendant responded to the initial version of the PSR that was disclosed to the parties. (PSR at A.1.) Petitioner-Defendant's remaining objections were noted in the PSR Addendum, and the substance of the objections were also addressed in

2

Petitioner-Defendant's first sentencing memorandum.  (PSR at A.1-3; Doc. No. 67 at 2-4, 6.)

Petitioner-Defendant was sentenced on August 1, 2018.  (Doc. Nos. 72, 73.)  At sentencing, this Court adopted the PSR with changes.  (Doc. No. 73 ("Stmt. of Reasons") Sec. I.)  Specifically, the Court adjusted the base offense level to 18 from 24 and the total offense level to 15 from 23.  (*Id.* at B.1.)  The Court also declined to apply a two-level increase under USSG §3C1.2.  (*Id.* at B.2.)  The Court pronounced a sentence of 80 months of imprisonment for each count, including an upward departure of 13 months and an upward variance of 18 months of imprisonment for a total addition of 33 months and a reduction of three months based on Petitioner-Defendant's time in custody, to run concurrently, and to be followed by 5 years of supervised release per count, also concurrent.  (*Id.* at Sec. IV. C-D, V. A; Doc. No. 72 at 1-3; Doc. No. 81 ("Sentencing Hrg.") at 33, 35, 50).

Petitioner-Defendant filed a notice of appeal on August 7, 2018. (Doc. No. 76.) Petitioner-Defendant appealed his sentence on the grounds that this Court erred when it departed and varied upward from the advisory range under the Guidelines.  *United States v. Edmonds*, 920 F.3d 1212, 1213 (8th Cir. 2019).  The Eighth Circuit found no error in the Court's sentencing decisions, including the overall length of Petitioner-Defendant's sentence.  *Id.* at 1214-15.  Petitioner-Defendant timely filed this § 2255

motion and supporting memorandum of law on May 20, 2019 (Doc. Nos. 89, 90), which the Government opposed (Doc. Nos. 93, 96).[1]

## I. Plea Agreement

Petitioner-Defendant signed a Plea Agreement with the Government on March 18, 2018. (Plea Agreement at 8.) The parties agreed that Petitioner-Defendant would plead guilty to Counts 1 through 5 of the superseding indictment and that the Government would move to dismiss Count 6 after Petitioner-Defendant's sentence was imposed. (*Id.* ¶ 1.) The parties agreed to the factual basis for the offenses related to Counts 1 through 5, specifically that Petitioner-Defendant distributed mixtures and substances containing heroin, carfentanil, methamphetamine, and furanyl fentanyl. (*Id.* ¶ 2.) The parties also agreed that by statute, each count carried a maximum penalty of 20 years' imprisonment. (*Id.* ¶ 5(a).) Petitioner-Defendant waived his rights to pursue pretrial motions and to appeal his convictions or the issue of guilt as to Counts 1 through 5. (*Id.* ¶¶ 3-4.) The Plea Agreement addressed the applicable Guidelines, with the parties failing to reach agreement as to the proper base offense level. (*Id.* ¶ 7(a).) The Government's belief that the base offense level should be 30 was noted along with

---

[1] In his reply to the Government's initial response, Petitioner-Defendant correctly noted that the Government failed to rebut his arguments regarding the ineffectiveness of his counsel. (Doc. No. 94.) The Court granted the Government's motion for leave to file a surreply to address this error (Doc. Nos. 95, 98), and while it acknowledges Petitioner-Defendant's concerns about the uncommon nature of such a motion (Doc. No. 99), it finds that they are unfounded. Petitioner-Defendant was not prejudiced by the Court's grant of leave and was also afforded ample opportunity to argue his petition, as his additional filing demonstrates. The Government gains no undue advantage in these proceedings through being allowed to respond to all of Petitioner-Defendant's arguments.

Petitioner-Defendant's contention that it should be 18.  (*Id.*)  The Government reserved its right to present evidence at sentencing that Petitioner-Defendant's distribution of controlled substances was the "but for" cause of a death by overdose, and Petitioner-Defendant noted his disagreement with that contention.  (*Id.*)

The Government agreed, however, to recommend a three-level reduction in Petitioner-Defendant's total offense level for acceptance of responsibility.  (*Id.* ¶ 7(d).)  The parties agreed that no specific offense characteristics applied.  (*Id.* ¶ 7(b).)  The parties disagreed about the proper criminal history category ("CHC"); the Plea Agreement notes that the Government believed that based on his record, Petitioner-Defendant belonged in CHC VI, but that Petitioner-Defendant believed CHC IV would be correct.  (*Id.* ¶ 7(e).)  Using their respective calculations but each factoring in a three-level reduction in the offense level for acceptance of responsibility, the parties differed on the applicable Guidelines range. (*Id.* ¶ 7(f).)  Petitioner-Defendant believed the correct range would call for a sentence of 30 to 37 months' imprisonment, while the Government's calculations resulted in a range of 130 to 162 months' imprisonment.  (*Id.*)

The parties stated their understanding that while they were bound by their stipulations with respect to Guidelines calculations, the Court was not.  (*Id.* ¶ 8.)  The parties agreed that the Court "may make its own determination regarding the applicable guideline factors and the applicable [CHC]," and "may also depart from the applicable Guidelines."  (*Id.*)  Even if the Court determined that the applicable Guidelines calculations or Petitioner-Defendant's CHC were different from those calculated by the

5

parties, they agreed that they could not withdraw from the Plea Agreement and that this Court's determinations would govern the sentence imposed. (*Id.*)

## II. Presentence Investigation Report

On the same day that Petitioner-Defendant entered his plea of guilty, this Court ordered the United States Probation Department ("Probation") to prepare a presentence investigation report ("PSR"). (Change of Plea Hrg. at 44.) The PSR included a summary of the Plea Agreement as well as information about the heroin overdose death that the Government attributed in part to Petitioner-Defendant. (Doc. No. 60 ("PSR") ¶¶ 3, 7-9.) It also attributed the sale of at least 81 grams of heroin containing carfentanil and furanyl fentanyl to Petitioner-Defendant. (*Id.* ¶ 20.)

The PSR discussed the application of the Guidelines, using the then-current 2016 version. (*Id.* ¶ 26.) Petitioner-Defendant's base offense level was calculated to be 24 after grouping all five counts and assigning the weight of the total mixtures or substances in question to the controlled substance resulting in the greater offense level—here, a marijuana equivalency totaling 217.38 kilograms. (*Id.* ¶¶ 27-28.) According to the PSR, pursuant to USSG §3C1.2, Petitioner-Defendant was subject to a two-level increase because he "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" on May 24, 2017. (*Id.* ¶¶ 23, 35.) The final calculus resulted in a total offense level of 23. (*Id.* ¶ 40.)

Part B of the PSR detailed Petitioner-Defendant's lengthy criminal history, arriving a subtotal criminal history score of 38. (*Id.* ¶¶ 42-75.) Two points were added to his score per the Guidelines because the offenses in question took place while

Petitioner-Defendant was under a previously imposed criminal sentence, resulting in a total score of 40 which placed Petitioner-Defendant in CHC VI. (*Id.* ¶¶ 76-77.) Following the Guidelines, the total offense level of 23 combined with a CHC of VI resulted in a range of 92 to 115 months' imprisonment. (*Id.* ¶ 105.) The PSR noted that this range was not the same as either contemplated by the parties in the Plea Agreement due to different calculations of the criminal history score and the addition of the reckless endangerment enhancement. (*Id.* ¶ 107.) Petitioner-Defendant's unresolved objections to the PSR was noted in its addendum. (*Id.* at A.1.)

### III. Change of Plea Hearing

Petitioner-Defendant appeared before this Court on March 20, 2018 to enter pleas of guilty to Counts 1 through 5 of the superseding indictment. (Change of Plea Hrg. at 1.) After taking an oath to be truthful, he stated that he had had enough time to discuss his matter with his attorney and was satisfied with his representation. (*Id.* at 6.) Petitioner-Defendant also stated that no one forced or threatened him to make him sign the Plea Agreement and that the document represented the only agreement in this matter. (*Id.* at 9.) He went on to affirm that he understood what he was pleading guilty to, and that the counts carried a penalty of up to twenty years in prison. (*Id.* at 11.) Further, Petitioner-Defendant understood that although the parties agreed to argue their respective positions with respect to the applicable drug quantity, neither side could back out of the Plea Agreement. (*Id.* at 20.)

The Court pointed out that in the Plea Agreement, the Government reserved the right to present evidence and argue that the distribution for which Petitioner-Defendant

was admitting responsibility was the but-for cause of a death by overdose, and to argue that this should be considered at sentencing. (*Id.* at 21.) Though Petitioner-Defendant said that he understood, his counsel as well as the Government's questioned him further, and Petitioner-Defendant maintained that he understood. (*Id.* at 24-25.)

Petitioner-Defendant also told this Court that he understood that the parties agreed that they knew of no specific offense characteristics that would apply at sentencing. (*Id.* at 27.) Again, this time when asked if he understood that the parties did not agree as to the correct CHC but that it would be for the Court to determine, Petitioner-Defendant answered that he understood the parties' positions and that no matter how it was decided, nobody could back out of the Plea Agreement. (*Id.* at 30.) He acknowledged the difference between the parties' calculations of the appropriate range under the Guidelines (his being 30 to 37 months versus the Government's position that it should be 130 to 152 months), and again, he affirmed that he understood. (*Id.* at 30-31.)

Petitioner-Defendant stated that he understood the parties would be able to argue for what they believed would be a fair sentence and that he could appeal the sentence, and once more, he said he understood that this did not mean he could back out of the Plea Agreement. (*Id.* at 33.) When the Court asked Petitioner-Defendant if he had any questions about any aspect of the proceeding, he asked to speak with his attorney. (*Id.* at 34.) After this discussion, Petitioner-Defendant stated again that he understood. (*Id.*)

Finally, Petitioner-Defendant said that he understood that by entering guilty pleas, he was giving up his rights to claim that he was not guilty or that his constitutional rights were violated up to that point. (*Id.* at 39-40.) He pled guilty to Counts 1 through 5 of the

superseding indictment, said that he was not making any claim that he was innocent of any of the charges, and admitted he knew that he was distributing controlled substances and that it was illegal to do so. (*Id.* at 40-43.) His pleas were accepted and the PSR ordered. (*Id.* at 44.)

## IV.  Petitioner-Defendant's Sentencing Memorandum

Petitioner-Defendant submitted, through counsel, a sentencing memorandum arguing that the PSR improperly introduced an additional 81 grams of a controlled substance as "purported relevant conduct" from the "putatively dismissed Count 6." (Doc. No. 67 ("Sentencing Mem.") at 2.) Petitioner-Defendant renewed his objections to the PSR and disputed the notion that a criminal history score well above the 13 points required him to fall under CHC VI, arguing that the Court should look at more than the number of points. (Sentencing Mem. at 8.) Petitioner-Defendant also argued that the proportion of carfentanil in drugs as sold and used adequately accounted for the drug's potency, and asked that the Court consider the restrictive conditions of his pre-trial detention when determining the appropriate custody credit. (*Id.* at 12-13, 15.) Finally, Petitioner-Defendant requested that the Court sentence him to a term of 41 to 51 months' imprisonment. (*Id.* at 15.)

## V.  Sentencing Hearing

Petitioner-Defendant appeared with counsel for sentencing on August 2, 2018. (Sentencing Hrg. at 1.) At the outset, both counsel agreed that an adjusted offense level of 15 and CHC of VI would result in an advisory range of 41 to 51 months. (*Id.* at 4.)

This total reflected the Government's agreement that no reckless endangerment enhancement should be applied. (*Id.* at 17.)

Petitioner-Defendant's counsel requested a sentence within the Guidelines. (*Id.* at 7.) Defense counsel argued that an upward departure was not warranted based on Petitioner-Defendant's criminal history score of 40 because 25 points were for non-violent or minor offenses and that an upward variance was not warranted based on the potency and societal impact of carfentanil, which was already accounted for in the Guidelines, reiterating and expanding on the arguments submitted in his sentencing memorandum. (*Id*. at 8-10, 25.)

Petitioner-Defendant chose to address the Court, stating that he would like to apologize for his wrongs and that he was sorry "for what [he] did, and for being guilty of Count 1 through 5." (*Id*. at 12-13.)

The Government requested that the Court vary upward because Petitioner-Defendant's criminal history was underrepresented by his Guidelines score, which did not count some offenses. (*Id*. at 19-20.) The Government also requested that the Court depart upward to reflect the danger to society from the substances involved. (*Id*.)

The Court granted an upward departure of 15 months to petitioner-Defendant's term of imprisonment for understated criminal history over Petitioner-Defendant's objection, explaining that it was not a matter of the number of points but because of his history of assaultive behavior and offense while on supervised release. (*Id.* at 29-30.) The Court granted an upward variance of 18 months for the seriousness of the offense

conduct, again noting Petitioner-Defendant's objection. (*Id.* at 32.) As the Court explained, "anything less than 84 months will promote massive disrespect for the law." (*Id.*) The Court exercised its discretion to credit Petitioner-Defendant three months for hard time served in Sherburne County and an additional four weeks for time served on a related state court matter, arriving at a total term of imprisonment of 80 months. (*Id.* at 33.)

Petitioner-Defendant restated his objections to the PSR, stating that dates and quantities were inaccurate. (*Id.* at 36.) The Court responded that those items "played no role whatsoever" in the sentence imposed, which was based on the counts to which Petitioner-Defendant admitted only. (*Id.* at 36-37.) The Court allowed Petitioner-Defendant to enter the initial PSR into the record after advising him that it was not previously before the Court and was not considered at sentencing. (*Id.* at 39, 42, 44.) Although Petitioner-Defendant continued to generally dispute the Court's reasoning, he acknowledged that his counsel "was a good lawyer." (*Id.* at 47.)

The Court imposed a sentence of 80 months' imprisonment and five years' supervised release per count, to be served concurrently, and recommended that Petitioner-Defendant participate in the Residential Drug and Alcohol Program. (*Id.* at 50.) In accord with the Plea Agreement, Count 6 of the superseding indictment was dismissed upon the Government's motion. (*Id.* at 55.)

VI. **Petitioner-Defendant's Appeal**

Petitioner-Defendant appealed his sentence to the Eighth Circuit on the grounds that this Court erred when it departed and varied upward from the Guidelines at

sentencing. *Edmonds*, 920 F.3d at 1213. The Eighth Circuit affirmed Petitioner-Defendant's sentence, finding no error in this Court's sentencing decisions. *Id.* at 1214.

Petitioner-Defendant now renews the arguments made to the Eighth Circuit and further contends that he received ineffective assistance of counsel in that his attorney failed to object to the upward departure and variance, to the application of specific offense characteristics, or to what he contends was the Government's breach of the Plea Agreement. (*See generally* Doc. No. 90.) Petitioner-Defendant alleges that his attorney should have objected at sentencing and entered a motion to withdraw his pleas of guilty to Counts 1 through 5. (*Id.* at 3.)

The Government maintains that it fulfilled its obligations under the Plea Agreement and that Petitioner-Defendant's own sworn statements at the time he entered his pleas of guilty and at sentencing show that he was effectively represented by his counsel and the Court correctly applied the law at sentencing. (Doc. No. 96 at 5-6, 10.)

## DISCUSSION

I. **Section 2255 Legal Standard**

Title 28, United States Code, Section 2255, provides that a prisoner "may move the court which imposed the sentence to vacate, set aside, or correct the sentence." In making such a motion, a § 2255 action requires a prisoner to show that he or she is entitled to such extraordinary relief because:

> [T]he sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such

sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . .

28 U.S.C. § 2255(a). If the court finds such a defect in sentencing, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A § 2255 request for relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). The scope of the remedy provided under § 2255 "does not encompass all claimed errors in conviction and sentencing." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (internal quotations omitted). Nor can a § 2255 petition be used to "relitigate matters decided on direct appeal." *Id.* at 702. Ordinary questions of sentencing guideline interpretation do not rise to the level of a "miscarriage of justice" and may not be relitigated under a Section 2255 claim. *Id.*

As elaborated below, Petitioner-Defendant's claims do not describe any fundamental constitutional, jurisdictional, or other severe defect in his sentence.

## II.  Length of Sentence

Petitioner-Defendant now seeks to relitigate his direct appeal. His situation is not one of the "rare exceptions" that would allow him to relitigate matters decided in his direct appeal. *Id.* However, in the interest of completeness, the Court will briefly review the first two grounds of his petition.

### A. Upward departure

As recounted above and noted by the Eighth Circuit in its affirmation of the upward departure for Petitioner-Defendant's extensive criminal history, this Court "did not consider merely the number of prior convictions or the points calculated according to the Guidelines" but instead "analyzed the seriousness of the crimes." *Edmonds*, 920 F.3d at 1214. The Eighth Circuit opinion found that this Court "considered the appropriate factors and gave an adequate explanation for its decision to impose a 15-month upward departure from the advisory Guidelines range." *Id.* at 1215.

### B. Upward variance

The Eighth Circuit concluded that this Court did not err in imposing an 18-month upward variance from the advisory Guidelines range based on "the seriousness of the offenses, a factor set forth in 18 U.S.C. § 3553(a)." *Id.*

### C. General length

The Eighth Circuit also concluded that this Court did not impose a substantially unreasonable sentence by sentencing Petitioner-Defendant to concurrent terms of 80 months' imprisonment. *Id.*

## III. Ineffective Assistance of Counsel

Petitioner-Defendant claims a third ground for relief based on ineffective counsel in his attorney's failure to challenge: (1) the Government's breach of the Plea Agreement, (2) the application of Guidelines Chapter Three enhancements, and (3) the 18-month upward variance. (Doc. No. 90 at 2, 4.) Petitioner-Defendant also argues that

his counsel should have entered motions to delay his sentencing and to withdraw his guilty pleas. (*Id.* at 3.)

Every criminal defendant has a constitutional right, guaranteed by the Sixth and Fourteenth Amendments, to effective counsel at trial and sentencing. *Strickland v. Washington*, 466 U.S. 668, 706 (1984); *Wooten v. Norris*, 578 F.3d 767, 781 (8th Cir. 2009). The Eighth Circuit follows the two-part *Strickland* test for reviewing claims of ineffective counsel; to succeed in his claim, Petitioner-Defendant must show that his counsel's performance was unreasonably deficient, and that Petitioner-Defendant "suffered such prejudice from the deficient performance there is a reasonable probability the result would have been different." *Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014). To prevail on a claim for ineffective assistance of counsel under § 2255, a defendant must overcome a "heavy burden." *Apfel*, 97 F.3d at 1076. An attorney's performance is not deficient for declining to file a motion he or she reasonably believes would be futile, nor is it deficient if an attorney fails to anticipate a change in law. *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014). A court does not need to determine whether an attorney's performance was deficient before examining the issue of whether the defendant suffered any prejudice "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice." *Nelson v. United States*, 909 F.3d 964, 970 (8th Cir. 2018).

Careful review of the record before this Court shows that the facts do not support Petitioner-Defendant's claims. The Court observes that Petitioner-Defendant seems to have misapprehended the PSR, the Guidelines, or his sentencing judgment as to the

application of enhancements. His sentence was based on the range of 41-51 months' imprisonment calculated under the Guidelines as agreed to by the parties at the time of sentencing and in accordance with the Plea Agreement, which noted the differences in the range predicted by each party as well as their understanding that each party was free to argue to the Court for what it considered to be the appropriate sentence. (Plea Agreement ¶¶ 7, 8.) No enhancement for reckless endangerment was applied. (Sentencing Hrg. at 4, 17; Stmt. of Reasons at Sec. I. B.2.)

Petitioner-Defendant received the full benefit of his Plea Agreement. Had the Government "advocate[d] for an outcome different from the one it had promised to seek" or failed to uphold its obligations under the bargain, it would have breached the Plea Agreement. *United States v. Pierre*, 912 F.3d 1137, 1142 (8th Cir. 2019) (internal citations and quotations omitted). Here, the Government did not breach it by seeking a departure or variance; both parties reserved the right to make such arguments. (Plea Agreement ¶ 7(i).) The Government complied with the provisions of the Plea Agreement by agreeing to Guidelines that factored in a reduction for acceptance of responsibility and moving to dismiss Count 6. (*See, e.g.,* Sentencing Hrg. at 4, 55.) Any objection or motion by Petitioner-Defendant's counsel to the contrary would have been without merit. It is not ineffective assistance of counsel when a defense attorney fails to raise a meritless issue because such an omission meets an objective standard of reasonable competence and does not prejudice the defendant. *See, e.g., Toledo v. United States*, 581 F.3d 678, 681 (8th Cir. 2009); *Gordon v. United States*, 27 F.3d 571 (8th Cir. 1994).

Similarly, any effort on the part of Petitioner-Defendant's part to withdraw his guilty pleas would have been futile. As detailed above, he was thoroughly apprised of the provisions of the Plea Agreement at the time he entered his pleas, including the statutory maximum penalty of twenty years' imprisonment that applied to each count he admitted. (Plea Agreement ¶ 5; Change of Plea Hrg. at 11.) He answered in the affirmative when asked if he understood the aspects of the Plea Agreement that the parties reserved their rights to make arguments about, and stated flatly and repeatedly that he understood that no matter the Court's ultimate decisions, he could not back out of the Plea Agreement. (Change of Plea Hrg. at 20-21, 25, 30, 33.)

A defendant can show prejudice by showing a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," but "courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Dat v. United States*, 920 F.3d 1192, 1195 (8th Cir. 2019) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)) (internal quotations and punctuation omitted). Even if Petitioner-Defendant's counsel advised him inaccurately about the Guidelines or what sentence the Court was likely to impose, which he provides no evidence to indicate happened here, Petitioner-Defendant entered into the Plea Agreement knowingly and voluntarily after this Court informed him of the critical terms. *See, e.g., United States v. Quiroga*, 554 F.3d 1150, 1155 (8th Cir. 2009). He had no valid

grounds to withdraw from the Plea Agreement, and thus, it was not ineffective assistance when his counsel did not enter such a motion.

Petitioner-Defendant astutely observes that "when a defendant claims to understand his plea agreement, it doesn't mean that his understanding is correct." (Doc. No. 99 at 4.) Of course, this is true but there is no amount of communication or effort on the part of any attorney or judge that can overcome this limitation. The Plea Agreement clearly sets forth its terms and Petitioner-Defendant was given ample opportunity to review it and ask any questions he had about it. This Court, as evidenced in the record, explained every key point, and Petitioner-Defendant, by his statements and other conduct, gave every indication that he understood. In the end, the Court is clearly obligated to take Petitioner-Defendant at his word and will hold him to his sworn statements. Petitioner-Defendant has failed to show that he is entitled to the relief requested.

## EVIDENTIARY HEARING

Based on the record before the Court, there is no reason for the Court to further explore any credibility issues with respect to Petitioner-Defendant's claims. A § 2255 motion can be dismissed without a hearing when: (1) defendant's allegations, if accepted as true, would not entitle him to relief; or (2) the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions, rather than statements of fact. *Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998). No hearing is necessary when the record is clear. *Latorre v. United States*, 193 F.3d 1035, 1038 (8th Cir. 1999). Applying this standard to the Petitioner-Defendant's

allegations and the record before the Court, the Court concludes that no evidentiary hearing is required in this case.

## CERTIFICATE OF APPEALABILITY

An appeal cannot be taken from a final order denying a motion under § 2255 without a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B)(2006); Fed. R. App. P. 22(b)(1). A court cannot grant a COA unless the applicant has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).

The Court has considered whether the issuance of a COA is appropriate. *See Tiedeman v. Benson*, 122 F.3d 518 (8th Cir. 1997). In that context, the Court concludes that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882 83 (8th Cir. 1994) (citing *Lozado v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). The Petitioner-Defendant has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

## CONCLUSION

The Court finds that the record in this case entirely forecloses any notion that Petitioner-Defendant's counsel provided ineffective assistance of counsel by failing to raise unfounded and futile arguments. Based upon the presentations and submissions of the parties, the Court having carefully reviewed the record in this matter, and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner-Defendant John Henry Edmonds' *pro se* Motion to Vacate, Set Aside or Vacate Sentence and Conviction Judgment Pursuant to 28 U.S.C. § 2255 (Doc. No. [89]) is respectfully **DENIED**.

2. No evidentiary hearing is required in this matter.

3. No Certificate of Appealability will be issued to Petitioner-Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: September 30, 2019              s/Donovan W. Frank
                                      DONOVAN W. FRANK
                                      United States District Judge